**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **DIANA MEMBRENO,** ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 19-CV-00369-PX |
| ) | |
| v. ) | Judge Paula Xinis |
| ) | Magistrate Judge Timothy J. Sullivan |
| **ATLANTA RESTAURANT PARTNERS,** ) | |
| **LLC,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

<u>**PLAINTIFF'S MOTION FOR SANCTIONS**</u>

# <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 8

I.     ARP'S FAILURE TO SUPPLEMENT DISCOVERY CONCERNING
DISCIPLINE AND TERMINATIONS AND DOCUMENT DESTRUCTION
WARRANT SANCTIONS............................................................................. 8

     A.     ARP's November 2019 responses to Plaintiff's discovery requests were
not made after reasonable inquiry and thus were not properly certified
by counsel pursuant to Fed. R. Civ. P. 26(e), warranting sanctions.................. 8

     B.     Defendant's failure to timely supplement discovery responses pursuant to
Fed. R. Civ. P. 26(e) warrants sanctions............................................................ 11

     C.     ARP's violation of the Court's February 12, 2020 Order should be
sanctioned pursuant to Fed. R. Civ. P. 37(b)..................................................... 14

     D.     Sanctions are warranted for spoliation of evidence........................................... 16

          i.     Defendants destroyed records when legally obliged to preserve
them............................................................................................................ 17

          ii.     Defendants' destruction of records was accompanied by a
culpable state of mind.............................................................................. 19

          iii.     The evidence that was destroyed was relevant................................. 21

     E.     Defendants' conduct warrants sanctions pursuant to the Court's
inherent authority............................................................................................... 23

II.     ARP VIOLATED RULE 26(E) BY FAILING TO TIMELY SUPPLEMENT
THEIR WRITTEN DISCOVERY RESPONSES.......................................... 24

III.     REQUESTED SANCTIONS ....................................................................... 28

IV.     PLAINTIFF SHOULD BE AWARDED REASONABLE ATTORNEYS' FEES
AND COSTS................................................................................................ 29

CONCLUSION.................................................................................................... 30

Defendants Jackmont Hospitality, Inc. and Atlanta Restaurant Partners, LLC ("ARP") have engaged in conduct that warrants sanctions. ARP's November 2019 responses to Plaintiff's first discovery requests concerning discipline and termination were not made after reasonable inquiry, in violation of its obligations under Rule 26(g) of the Federal Rules of Civil Procedure. ARP failed to timely supplement those responses when it determined that its prior representations were misleading, incomplete, and incorrect, and thus violated Rule 26(e). ARP also resisted the discipline and terminations discovery on grounds presented to Plaintiff and this Court that were misleading, and failed to promptly supplement or inform Plaintiff's counsel when it became clear its prior representations about the actual state of its records were inaccurate. After this Court on February 12, 2020 overruled ARP's objections and ordered ARP to promptly supplement (ECF No. 76), ARP failed to do so in a timely manner but instead only supplemented responses after the discovery deadline. That timing was consequential, because ARP had promised supplementation before the commencement of Plaintiff's depositions of eight ARP agents, however none came until after the depositions and after the discovery deadline passed. Those failures to supplement warrant sanctions under both Rules 37(b) and 37(c). Worse, the supplementation that ARP eventually did produce after the scheduled close of discovery contradicted entirely its prior representations made to Plaintiff and this Court as grounds for resisting the discovery. Moreover, even that supplementation was misleading because months later, at a 30(b)(6) deposition of Defendants that had been rescheduled and taken out of time, ARP attested to facts that were at odds with the late-produced supplementation and other representations. Again, these actions warrant sanctions under Rules 37(b) and (c).

All of these violations concerned Defendants' destruction of personnel files, including Plaintiff's, that contained records of discipline and terminations. ARP represented that the files

were destroyed at various times, whether "early 2017," "sometime in summer 2018," or after Plaintiff filed her civil action at the end of December 2018, and for reasons that are conflicting. No matter which is correct, Defendants destroyed the files and disciplinary records after they received notice of Plaintiff's charge of discrimination, and thus had a statutory duty to preserve them. Sanctions are warranted pursuant to Rule 26(g), 37(b), and 37(c), and this Court's inherent authority, and for spoliation of documents under well-established Fourth Circuit authority.

Additionally, Defendants have attached to their summary judgment motion and relied upon two witness declarations from previously undisclosed employees. *See* Defs' Memo. of Law in Supp. of Defs' Mtn. for Summ. J. at 11 & 32 (Aug. 15, 2020) ("Defs MSJ") [ECF No. 125]; *id.* at Exs. M (N. Fournier Declaration (Mar. 6, 2020)) & N (B. Kelly Declaration (Mar. 2, 2020)) [ECF Nos. 125-13, -14]. ARP violated Rule 26(e) by failing to supplement interrogatory answers seeking the identity of persons with knowledge. Additionally, the declarants and subjects they address should be excluded because their declarations (executed seven months ago) were not served before the discovery deadline or before Plaintiff took the 30(b)(6) deposition of Defendants, where the allegations of these declarants and information about them could have been explored.

Plaintiff respectfully requests that this Court grant her Motion, award the sanctions described herein, and award Plaintiff's reasonable attorneys' fees and costs.

## BACKGROUND

In their November 21, 2019 discovery responses, ARP objected on burdensomeness grounds to producing documents and interrogatory responses concerning discipline of employees at TGI Friday's Silver Spring because responding "would require reviewing hundreds of individual personnel files." Ex. 1, ARP's Resp. to Pl's First RFP Resp. to Nos. 22, 23, at 11-13 (Nov. 21, 2019); *see also* Ex. 2, ARP's Ans. to Int. No. 6, at 10-11 (Nov. 21, 2019). ARP further indicated

that in addition to the hundreds of personnel files, "some or many [files] may have been purged in the normal course of business." Ex. 1, at 12-13; Ex. 2, at 10. ARP also claimed that it "does not maintain centralized records or an electronically stored records [*sic*] or database from which ARP can pull disciplinary data for employees at a particular store." Ex. 2, at 10-11; *see also* Ex. 1, at 11-12. Following written correspondence, the parties conferred at length during January 2020 to resolve their differences, and in seeking to compromise, Plaintiff sharply narrowed the scope of her requests for discipline and terminations discovery. Plaintiff had been under the impression the limitations were agreeable, however ARP then insisted upon a further limitation that employees would have to be "on the roster in 2016" to be relevant and retrievable; the parties could not agree and therefore Plaintiff brought the dispute to the Court for resolution. *See* ECF No. 66, Plaintiff's Discovery Dispute Ltr. at 1-2 (Jan. 26, 2020).

In their February 10, 2020 response to the Court, Defendants expressed for the first time that all prior personnel files had been destroyed "in early 2017" when Defendants changed "from storing paper files to saving them electronically." ECF No. 76, Defendants Discovery Dispute Ltr. at 2 (Feb. 10, 2020). Due to that change in record-keeping practices, it contended, "Defendant does not have any personnel files, including any disciplinary information, prior to 2017." *Id*. This was new information to Plaintiff, however, because ARP had not shared it before.[1]

---

[1]    In their prior discussions, ARP represented that the recordkeeping for the Silver Spring store was "a mess" and that many disciplinary records had been destroyed. ARP took the position that it should not be compelled to respond because it could not produce what it did not have. Plaintiff, on the other hand, argued that ARP had a continuing duty to supplement, and thus no "on the roster limitation" should be imposed, and furthermore that Plaintiff had sought through interrogatories not only documents but also the knowledge of ARP known to its agents regarding the discipline of its employees. *See* ECF No. 66. Prior to its letter to Court, however, ARP had not indicated that all personnel files prior to 2017, including "all employees' discipline and/or separation notices," had been destroyed in the normal course of business in conjunction with an "early 2017" "change in its retention practice from storing paper files to saving them electronically." ECF No. 76 at 2.

After a telephonic hearing, the Court overruled Defendants' objections and ordered ARP to produce "complete responses" to Plaintiff's discovery requests seeking information and documents concerning discipline (Interrogatory No. 6 and Document Production Request Nos. 22 and 23). *See* ECF No. 78, Order (Feb 12, 2020). The Court further ordered ARP to "supplement its responses in a timely manner if it learns that its previous responses were incomplete or incorrect." *Id.*

Following the Court's ruling, the parties readied for eight depositions to be taken by Plaintiff between February 20 and the February 28 date for the close of discovery. Consequently, the parties focused on ARP's prompt supplementation of interrogatory responses and documents in accordance with the Court's February 12, 2020 Order. On February 17, Defendants promised to provide their supplementation by the next day. *See* Ex. 4, Email thread between J. Puth and S. Kim et al., at 5 (Feb. 17 to 26, 2020). No supplementation, however, was forthcoming on that day or on the days that followed, except for a single disciplinary document on February 20. *See id.* at 2. As the parties convened each day for (pre-social distancing) depositions, counsel for Plaintiff related the vital need for supplementation, Defendants' duty to supplement as promised before and in keeping with later promises for imminent production, particularly light of the depositions of management officials. *Id.* at 1. ARP made vague promises, including on February 26 that supplementation was about to happen and documents were being Bates stamped by a paralegal, which were "on the way," or at least would be provided "by the latest tomorrow morning" (February 27). Ex. 5, Ventura Dep. Tr, 89:21-91:3 (Feb. 26, 2016). No such supplementation was made.

Given ARP's earlier representations to the Court that the destruction of personnel files was due to a recordkeeping change from paper files on-site to electronic maintenance in early 2017,

4

Plaintiff focused her deposition inquiries on those practices. *See* ECF No. 76 at 2. For instance, witness Kendrick Pittman, a two-year manager at Silver Spring who was General Manager from 2016 until March 2017, testified that personnel files were kept in paper form in the managers' office throughout the entirety of his tenure.  Ex. 6, Pittman Dep. Tr. 19:21-20:10, 29:16–30:13, 79:21-80:9; 82:17-21 (Feb. 26, 2020).[2]

The timing of the destruction was particularly important because Title VII requires retention of all personnel records of a complainant and "all other employees [holding] similar" jobs, to be kept until any later civil litigation brought by the charging party ends.  *See* 42 U.S.C. § 2000e-8(c) (2018); 29 C.F.R. § 1602.14 (2020).  Montgomery County similarly require employers to "preserve all regularly kept personnel records . . . until final disposition of the charge or action." Montgomery County Code § 27-20(c).  In this case, Defendants were served with Ms. Membreno's MCCR/EEOC charge on April 26, 2017.  Ex. 7, Ltr. from MCCR (Apr. 26, 2017); Ex. 8, Notice of Charge of Discrimination (Apr. 26, 2017).  Notably, Defendants not only destroyed personnel files for other employees, but also destroyed Ms. Membreno's personnel file.  Ex. 9, Batten-Miller Dep. Tr. 50:2-20 (May 13, 2020).

After completion of the February depositions and after the close of discovery, ARP supplemented its discovery responses; this time, however, it provided a new explanation and

---

[2]    Other aspects of ARP's representations to Court seem convoluted. For instance, ARP claimed that the reason for its "on the roster in 2016" limitation was because "[d]ue to the way Defendant maintains and stores data within the company, it is difficult, if not impossible, for Defendant to gather the employee list prior to 2016. In fact, although Defendants' counsel initially requested the employee list from 2014, ARP could only provide the list from 2016. In addition, once Defendants' counsel had the employee list from 2016, it had to spend a significant amount of time comparing the list to the corporate employee list from 2016 and ensure the completeness and accuracy of the employee list because the original list, in its normal business form, did not include certain individuals who were transferred in from another store."  In fact, however, Defendants had electronic records reflecting employees "on the roster" back to 2014, as is reflected by a record that ARP produced in discovery concerning Plaintiff.  *See* ECF No. 132-3.

timing for the destruction of personnel files.  *See* Ex. 10, Defendant ARP's Second Supp. Resps. to Pl's First Int. No. 6, at 3 (Feb. 28, 2020).[3]  In that supplementation, ARP asserted that, "[a]s noted previously, . . . . Defendants learned that many employee personnel files were destroyed in error during a store audit sometime in the summer of 2018."  *Id.*  This "[a]s noted previously" language was misleading because APR had not previously informed Plaintiff—whether in formal responses or informal communications—that any activity in 2018 led to the destruction of disciplinary records or personnel files or that they were destroyed "during a store audit." Furthermore, ARP's answers revealed that Defendants had interviewed several managers and employees, who represented that "numerous employees had been disciplined for these infractions, up to and including termination," but that they were unable to say who they were.  *Id.* at 2-3.

Two and a half months later, on May 13, Plaintiff took the 30(b)(6) deposition of Defendants.[4]  Defendants' designated corporate representative, Human Resources Vice President Charyle Batten Miller,[5] offered different timing and a different reason for the destruction of personnel files.  Rather than being destroyed "during a store audit," she testified for Defendants that the reason for the destruction was that that Defendants' Training Director had visited TGI Friday's Silver Spring and "made a statement about cleaning up and getting rid of some of the stuff." Ex. 9, at 159:2-160:3.  The store managers interpreted as "referring to the employee files," and the store managers thereafter "tossed them out."  *Id.* 159:2-160:3, 174:14-19.

---

[3]     Though dated February 28, 2020, Defendants served these interrogatory answers on Plaintiff on February 29, 2020.  Ex. 11, Email from E. Mason to J. Puth (Feb. 29, 2020).

[4]     The 30(b)(6) deposition was taken out of time due to a dispute between the parties, *see* ECF Nos. 84, 85, and then delayed considerably due to COVID-19 and other circumstances.

[5]     Ms. Batten Miller is referred to herein as Ms. "Batten," the name she used throughout the time frame of the case and on her verifications to the interrogatory responses at issue here.

Corporate designee Batten testified that the destruction of personnel files occurred after Plaintiff had filed her lawsuit.  *Id.* 162:10-14.  The designee testified that the Trainer, Nancy Fournier, reported that she "never told [the managers] to throw out the employee files" and assumedly was not in the store while the files were being destroyed; she never would have told them to destroy the files and, if there were any question and she "didn't know the answer, she would call [Ms. Batten], and that didn't happen."  *Id.* 174 10-13; 160:22-161:18.

When asked whether she believed the managers when they informed her they had been instructed to destroy personnel files, the corporate designee Batten testified it was "a little hard to believe" and "boggles [the] mind," particularly because, as Vice President for Human Resources, she advises stores to keep those records for at least seven years.  *Id*. 159:19-21; 160:22-161:18. As well, she was aware of the EEOC requirements for retention of personnel records.  *Id.* 174:21-175:2.  Upon further questioning about the timing in relation to Plaintiff's civil action, defense counsel then led the witness to an exhibit reflecting ARP's February 28 supplemental interrogatory response, which referred to destruction of files "during a store audit" in "summer 2018," and then prompted the witness equate the destruction after the Training Director "made a statement about cleaning up" to destruction "during a store audit" in summer 2018.  *Id*. 166:8-19, 168:10-169:8. Corporate VP Ms. Batten had found out those details about the document destruction "a few months" before the May 13, 2020 30(b)(6) deposition.  *Id.* at 162:15-163:2.

## ARGUMENT

### I.  ARP'S FAILURE TO SUPPLEMENT DISCOVERY CONCERNING DISCIPLINE AND TERMINATIONS AND DOCUMENT DESTRUCTION WARRANT SANCTIONS.

#### A.  ARP's November 2019 responses to Plaintiff's discovery requests were not made after reasonable inquiry and thus were not properly certified by counsel pursuant to Fed. R. Civ. P. 26(e), warranting sanctions.

Rule 26(g) of the Federal Rules of Civil Procedure requires:

> that every discovery disclosure, request, response or objection must be signed by at least one attorney of record, or the client, if unrepresented.  Fed. R. Civ. P. 26(g)(1). The signature "certifies that to the best of the person's knowledge, information, and belief *formed after a reasonable inquiry*," the disclosure is complete and correct, and that the discovery request, response or objection is: (a) consistent with the rules of procedure and warranted by existing law (or by a nonfrivolous argument for extending, modifying, or reversing existing law); (b) is not interposed for any improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); and (c) is neither unreasonable nor unduly burdensome or expensive, (considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.  Fed. R. Civ. P. 26(g)(1)(A), (B)(i)-(iii)

*Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) (original emphasis). "If a lawyer or party makes a Rule 26(g) certification that violates the rule, without substantial justification, the court (on motion, or *sua sponte*) must impose an appropriate sanction, which may include an order to pay reasonable expenses and attorney's fees, caused by the violation."  *Id*. (citing Fed. R. Civ. P. 26(g)(3)); *see also Barnes v. NCC Bus. Servs., LLC*, No. PJM-18-1473, 2019 U.S. Dist. LEXIS 148363, at *3 (D. Md. Aug. 30, 2019) (awarding reasonable attorney's fees and expenses for violation of Rule 26(g)); *Branhaven, LLC v. Beeftek, Inc.*, 288 F.R.D. 386, 393 (D. Md. 2013) (same); *Poole v. Textron, Inc.*, 192 F.R.D. 494, 505 (D. Md. 2000) (same).

In their November 21, 2019 Responses to Plaintiff's Requests for Production, Defendants objected, *inter alia*, on the basis that production of the requested discipline and termination records "would require reviewing hundreds of individual personnel files"  and would therefore be unduly

burdensome.  Ex. 1, at 11-13.  ARP objected on substantially the same grounds to Plaintiff's Interrogatory No. 6, seeking information known by them about employee discipline.  Ex. 2, at 10-11.  If one or another of Defendants' shifting versions of their destruction of personnel files (and disciplinary records) is true and the files were destroyed in 2017 or 2018, ARP's reasons for its objections are without basis.

If the bases for their November 2019 objections are without factual basis, then ARP failed to first make a reasonable inquiry and thus violated Rule 26(g).  As noted by Judge Grimm in *Mancia*, "[Rule 26(g)] and its commentary are starkly clear: an objection to requested discovery may not be made until after a lawyer has 'paused and consider[ed]' whether, based on a 'reasonable inquiry,' there is a 'factual basis [for the] . . . objection.'"  *Mancia*, 253 F.R.D. at 358 (quoting Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments).

In this instance, in its November 2019 responses, ARP failed in its duty to make "reasonable inquiry" because it apparently failed to undertake an investigation to support its contentions.  *See id*. at 357.  The effect of ARP's representations was to mislead the other party, which took ARP's representations at face value.  The subsequent shifts in explanation meant that legal strategies had to be adjusted and time and expense had had to be unnecessarily expended.  Moreover, as noted below, whenever Defendants ultimately discovered that their prior objections were inaccurate, they were duty bound to promptly supplement their responses, given that the responses were incomplete or incorrect in a material respect.  *See* Fed. R. Civ. P. 26(e)(1)(A).  Thus ARP's failure to investigate and promptly supplement those responses or to correct their several mischaracterizations regarding responsive discovery was particularly prejudicial and expensive given that almost all of Plaintiff's depositions were taken while relying on mistaken representations about the destruction of core proof for Plaintiff's discriminatory termination case.

Additionally, under the circumstances, ARP's February 28, 2020 Interrogatory response, with its anodyne description of destruction taking place "during a store audit," reflected both evasion and a violation of Defendant's "affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."  Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments.  This is particularly so where ARP was under a duty to promptly supplement by Rule and by Court Order and yet allowed one after another deposition to be taken, all while Plaintiff assumed that ARP's prior representations about files being purged only in the ordinary course of business practices (both in November 2019 and in its February 10 representation to this Court) to be true.  Thus, the bulk of Plaintiff's discovery was undertaken with misapprehensions of fact – whether affirmatively, by omission, or evasion – and by ARP's failure to adhere to its duties under Rules 26(g) and 26(e), among other obligations, to simply be fair and forthcoming in litigation before this Court.

In the days or weeks before ARP's February 28 supplementation, ARP knew its prior responses and representations were inaccurate and knew that Plaintiff was taking depositions operating under the assumption that ARP's representations to Court were true.  No matter the time it could have taken to supplement its responses, ARP's counsel failed to even pick up the phone and promptly notify Plaintiff's counsel as soon as possible before depositions began or before yet another deposition was taken, that its prior responses and prior representations to the Court were inaccurate and, as it claims now, that a calamitous error had resulted in the personnel files being destroyed "sometime in the summer of 2018."

"Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to . . . evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of . . . an objection."

Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments.  ARP plainly failed in its affirmative duty to undertake reasonable investigation under Rule 26(g) prior to representing in November 2019 that discovery of information regarding discipline and termination would be too burdensome because the information was contained in hundreds of personnel files at the Silver Spring store and too numerous to reasonably review.  That affirmative duty surely became more acute as the parties engaged at length in discussions regarding the discovery at issue in the months to follow, engaged in motions practice, and engaged this Court to resolve their dispute over this very discovery, at which time ARP made further misrepresentations.  ARP's conduct violated both the letter and spirit of Rule 26(g) and warrants sanctions.

**B.  Defendant's failure to timely supplement discovery responses pursuant to Fed. R. Civ. P. 26(e) warrants sanctions.**

As demonstrated above and herein, ARP's responses to interrogatories and requests for production in November 2019 that premised its burdensomeness objections on the existence of "hundreds of personnel files" for Silver Spring employees, except for those "purged in the normal course of business," *see*, *e.g.*, Ex. 1, at 12-13, was misleading, incomplete, and without reasonable factual basis.  The same holds true both for ARP's representations to this Court in its February 10, 2020 letter and in its supplemental responses served after the close of discovery.  ARP failed to promptly supplement its responses once learning that they were incomplete in material respects, and thus failed to meet its obligations under Rule 26(e).  *See Wondimante v. Assefa*, No. DKC 2004-3718, 2006 U.S. Dist. LEXIS 105829, at *34, 40 (D. Md. Oct. 12, 2006) (Rule 26(e) places a party "under a continuing obligation to supplement or correct required disclosures and discovery responses"; striking supplemental interrogatory list for failure to supplement).  Pursuant to Rule 37(c), therefore, sanctions are warranted.

Rule 26(e) imposes a duty on parties to supplement their answers to interrogatories or responses to document requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) authorizes a number of sanctions for violation of a party's failure to supplement responses in a timely manner in violation of Rule 26(e). The rule "does not require a finding of bad faith or callous disregard of the discovery rules," and in fact is an "automatic sanction," provided the failure to disclose is not substantially justified or harmless. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 & n.2, 596, 599 (4th Cir. 2003) (affirming exclusion of evidence as appropriate Rule 26(e) sanction). In the absence of substantial justification or harmlessness, a party who fails to timely supplement "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." *Russell v. Absolute Collection Servs.,* 763 F.3d 385, 396 (4th Cir. 2014) (quoting Fed. R. Civ. P. 37(c)(1)) (excluding evidence as sanction). Numerous other sanctions are authorized under the Rule, provided the parties are given an opportunity to be heard. *See* Fed. R. Civ. P. 37(c)(1). Those include ordering "payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). Additionally, the Rule authorizes the Court to "inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(B). Finally, it provides that the court "may impose other appropriate sanctions" including (but not limited to) the sanctions provided in Rule 37(b)(2)(A)(i)–(vi), Fed. R. Civ. P. 37(c)(1)(B), "a non-exclusive list of possible sanctions, which include ordering that certain facts be taken as established at trial; that the disobedient party may not oppose adverse claims or support its own defenses at trial; that pleadings may be stricken, the

action dismissed, or a default judgment issued against the disobedient party." *Thompson v. United States Dep't of Housing & Urban Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003).

Whether sanctions may be avoided based on a claim that the failure to supplement or disclose was "substantially justified or harmless," is guided by five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Russell*, 763 F.3d 385, at 397 (quoting *S. States*, 318 F.3d at 597); *see also Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011) (striking declaration from summary judgment motion as sanction for Rule 26(e) violation).

These factors support sanctions in this instance. The first factor is easily met because the misleading, incomplete, and shifting information provided during the discovery period stood in significant contrast to the information provide after discovery closed. For instance, ARP's apparently inaccurate November 2019 responses were left uncorrected (and thus, untrue) until after the close of discovery. In the interim, ARP provided differing reasons for resisting discovery, including disclosing for the first time in their February 10, 2020 letter to this Court the apparently untrue contention that all personnel files and disciplinary records prior to 2017 were destroyed due to an ordinary change in recordkeeping practices. ARP's supplementation (personnel records destroyed in 2018 "during a store audit") came only after discovery closed, too late, and contradicted the disclosures made during the discovery period, but even then suggested a business purpose and not the later "unbelievable" tale of destruction by the managers of the Silver Spring store, as testified to by Ms. Batten during the 30(b)(6) deposition.

The violations here are not readily cured, as well, particularly since Plaintiff charted her litigation strategy on inaccurate representations that were not timely corrected once ARP

"learn[ed] that in some material respect the disclosure or response [was] incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Based on inaccurate or incomplete representations, Plaintiff substantially narrowed her requests for discovery about disciplinary actions and terminations. As well, Plaintiff took eight depositions, all at substantial cost and expense, with the perspective based on Defendants' February 10, 2020 representation to the Court that all personnel files prior to 2017 were destroyed in the regular course of business due to a shift to electronic files (which now, according to ARP, is untrue). With respect to trial disruption, ARP here should not be allowed to benefit by its own failure to timely supplement, however the sanctions sought here more appropriately tend toward evidentiary than exclusion, and no limit should be placed on Plaintiff's ability to use the events at issue at hearing, trial, or otherwise. Plaintiff is unaware of any reasonable rationale that could explain the conduct in light of ARP's obligations under the Rule.

The importance of the evidence plainly supports a sanction here. As noted in Section 1(D)(iii) *infra*, comparator evidence is typically the heart of a discriminatory discharge case because it is particularly probative. Therefore, Plaintiff devoted a considerable portion of her discovery efforts, motions practice, and depositions on those issues, and significant time and expense.

The failure to supplement her was not substantially justified or harmless.

### C. ARP's violation of the Court's February 12, 2020 Order should be sanctioned pursuant to Fed. R. Civ. P. 37(b).

ARP violated the Court's February 12, 2020 Order by failing to timely produce discovery, and therefore sanctions pursuant to Rule 37(b)(2) are warranted. Fed. R. Civ. P 37(b)(2)(A) "permits a district court to impose certain punitive measures, up to and including dismissal, on any party who disobeys a discovery order." *Mackin v. Charles Schwab & Co.*, No. DKC 16-3923, 2019 U.S. Dist. LEXIS 3295, at *3 (D. Md. Jan. 8, 2019). Imposing a sanction under Rule 37

requires that the Court consider four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Id.* at *4 (quoting *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001)). The presence or absence of any one factor is not dispositive. *See Victor Stanley*, 269 F.R.D. 497, 533 (D. Md. 2010). Precluding evidence as a sanction typically requires "evidence of prejudice," which can be shown when a party's non-compliance with a court's discovery order makes it difficult for a party to fully defend or prosecute her claims or adequately prepare for trial. *Marshall v. Univ. of Md. Med. Ctr.,* No. TDC-17-2779, 2018 U.S. Dist. LEXIS 209280, at *8-9 (D. Md. Dec. 12, 2018). In *Mackin*, the Court found that a party acted in bad faith when it failed to comply with a court order requiring supplementation of discovery within fourteen days, and then provided only "a meager amount of additional information." *Id.* at *5. The Court found that the party's "insufficient" production warranted that she be "barred from introducing evidence that was not already provided to [the opposing party] through initial disclosures or discovery," thereby "limiting [her] ability to bolster her claims with additional dilatory evidence." *Id.* at *7-8.

Similarly here, the Court on February 12, 2000 ordered ARP to supplement its discovery responses concerning discipline and terminations. ARP failed to supplement by the promised deadline of February 18, 2020, or during depositions between February 20 and 28, despite knowing that its prior representations were inaccurate or incomplete. Instead, ARP only supplemented after the close of discovery. ARP failed to comply with the Court's Order, failed to timely supplement, misled Plaintiff by failing to inform her that its prior representations were erroneous, and deprived her of important information that would have affected significantly Plaintiff's litigation strategy

and deposition questioning.  Thus, sanctions are warranted.  *See, e.g.*, *Mackin*, 2019 U.S. Dist. LEXIS 3295, at *8 (numerous sanctions including excluding evidence); *Thompson*, 219 F.R.D. at 104-05 (D. Md. 2003) (sanctions including excluding evidence, precluding certain preparation of trial witnesses, and attorneys' fees and costs).

### D.  Sanctions are warranted for spoliation of evidence.

Defendants had a statutory duty to preserve the personnel files of individuals with jobs similar to Plaintiff.  See *infra* Section I(D)(iii).  By destroying those files, after they were notified of Plaintiff's administrative charge, Defendants had an affirmative duty to secure relevant information, including Plaintiff's personnel file and the files of all employees who held her job. Instead they were destroyed.  Defendants, through their agents (the managers of the Silver Spring store), intentionally destroyed relevant documents that could have provided ample evidence to bolster Plaintiff's case and undermine Defendants' defenses, particularly where "numerous employees" were disciplined up to termination but could not be identified, and files that would contain the records were destroyed.  *See* Ex. 10, at 2-3. These facts provide ample grounds for the Court to impose sanctions for document destruction.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001).  The civil justice system is designed for the Court to decide cases on their merits, which requires the fact-finder to review documents that the parties produce; "the truth cannot be uncovered if information is not preserved."  *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 526 (D. Md. 2010).  The Court has broad discretion to impose sanctions for spoliation "to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and, (3) restore the

prejudiced party to the same position he or she would have been in absent the wrongful destruction of evidence by the opposing party." *Jenkins v. Woody*, No. 3:15cv355, 2017 U.S. Dist. LEXIS 9581, *32-33 (E.D. Va. Jan. 21, 2017) (cleaned up). This authority derives from the Court's "inherent power to control the judicial process and litigation." *Silvestri*, 271 F.3d at 590.

Sanctions for spoliation of evidence are appropriate in the Fourth Circuit where the moving party shows:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery.

*Thompson*, 219 F.R.D. at 101.  These elements are all present in this case, thus sanctions for spoliation are appropriate, including evidentiary sanctions and an adverse inference instruction. *See Victor Stanley*, 269 F.R.D. at 533 ("Sanctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default.").

### i.   Defendants destroyed records when legally obliged to preserve them.

Title VII requires employers to "(1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation"  42 U.S.C. § 2000e-8(c).  Once a charge is filed, employers must retain all records relevant to the charge, including all personnel records of a complainant and "all other employees [holding] similar" jobs, to be kept until any litigation brought by the charging

party is completed. 29 C.F.R. § 1602.14.[6] Similarly, the Montgomery County Code requires employers to "preserve all regularly kept personnel records . . . until final disposition of the charge or [civil] action." Montgomery County Code § 27-20(c). The April 26, 2017 notice of Plaintiff's charge of discrimination also triggered Defendants' duty to preserve relevant evidence under common law, in addition to the personnel files and records at issue required under federal law and the county code. *See Silvestri*, 271 F.3d at 591 ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."); *Victor Stanley*, 269 F.R.D. at 521 (noting that the duty "may arise from statutes, regulations, ethical rules, court orders, or the common law. . ., a contract, or another special circumstance").

Plaintiff's March 2017 charge of discrimination was filed with the Maryland Commission on Civil Rights ("MCCR") and the U.S. Equal Employment Opportunity Commission. *See* Ex. 12, Membreno Charge (Mar. 15, 2017); Ex. 8. On June 23, 2017, Defendants' counsel, Ms. Mason, informed MCCR the company was "investigating" Plaintiff's charge and not interested in mediation. Ex. 13, Ltr. from E. Mason to MCCR (June 23, 2017). In July 2018, Plaintiff's counsel notified Ms. Mason that Ms. Membreno was represented by his firm. *See* Ex. 14, Ltr. from J. Puth to E. Mason (July 27, 2018).

Thus, from early 2017, Defendants were on notice that Plaintiff filed an administrative charge of discrimination, thus triggering their duty to preserve relevant records, to include the personnel records of "employees holding positions similar" to that of Plaintiff, 29 C.F.R. § 1602.14. Defendants' Human Resources Vice President was aware of the obligations, and she

---

[6]    The regulations further require routine maintenance of "any personnel or employment record," including termination records, for at least a year from when made. 29 C.F.R. § 1602.14.

advises Defendants' stores to keep personnel files for at least seven years.  *See* Ex. 9, at 159:19-21.  Defendants' destruction of personnel files, whether in 2017, 2018, or after Plaintiff filed her action, violated their preservation duty.  Once "the preservation duty has been triggered," a company is obligated "to ensure the preservation of relevant documents."  *Victor Stanley*, 269 F.R.D. at 524.  Defendants' destruction of records violated their common law and statutory preservation duty.

      ii.  <u>Defendants' destruction of records was accompanied by a culpable state of mind.</u>

Any one of "[t]hree states of mind satisfy the culpability requirement: bad faith or knowing destruction, gross negligence, and ordinary negligence, with the more culpable state of mind lessening the burden of showing relevance."  *EEOC v. LA Weight Loss*, 509 F. Supp. 2d 527, 538-39 (D. Md. 2007) (citing *Thompson*, 219 F.R.D. at 101).  A court "must find some degree of fault to impose sanctions," *Silvestri*, 271 F.3d at 590; and while ordinary negligence is sufficient to satisfy the intentionality requirement, greater findings of fault – such as gross negligence or bad faith/knowing destruction – may effect the severity of the sanction.  *See LA Weight Loss*, 509 F. Supp. 2d at 538-39.  "When evidence is destroyed in bad faith (i.e. intentionally or willfully), that fact alone is sufficient to demonstrate relevance."  *Thompson*, 219 F.R.D. at 101.

In *LA Weight Loss*, in granting the plaintiff's request for an adverse inference instruction, the court suggested that an employer's violation of its duty to preserve records under Title VII, with a showing of relevance, is sufficient to meet the culpability requirement:

> [I]ntentional destruction satisfies the mens rea requirement. The only other requirement is that the party seeking the inference show that the destroyed records were relevant to the party's claim or defense.

*LA Weight Loss*, 509 F. Supp. 2d at 539 (quoting *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 383-84 (2nd Cir. 2001)).  A party need not prove bad faith to support an adverse

inference instruction in the Fourth Circuit.  *See Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008) (district court erred by conditioning adverse inference instruction on showing of bad faith).

In this case, however, while the sufficient culpability is clearly met by Defendants' failure to abide by their legal duties to preserve, there is also ample evidence of bad faith, warranting an adverse inference and other sanctions.  *See Victor Stanley*, 269 F.R.D. at 530 (discussing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 644 (S.D. Tex. 2010)).  Bad faith was exhibited here, where Defendants were repeatedly evasive and misleading, failed to abide by the Court's Order, gave conflicting accounts for their refusal or inability to produce documents, and failed to produce discovery in keeping with its discovery obligations.

  iii. <u>The evidence that was destroyed was relevant.</u>

The records that were destroyed are highly relevant to Plaintiff's case because they are the most common and often the most probative evidence in a discriminatory termination matter.  As the Supreme Court noted, an employee asserting a claim of discrimination "must be afforded a fair opportunity to show that [the] stated reason" for an employer's action was a pretext and thus discriminatory; "*[e]specially relevant* to such a showing would be evidence" that individuals outside the protected class were treated more favorably.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) (emphasis added).  In the context of Title VII, the Fourth Circuit has expounded at length as to how comparator evidence is "particularly probative" and "especially useful in discrimination cases," relied upon "routinely," has been described as the "defining element of discrimination law," and is directed at the very definition of the term "discrimination." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719-720 (4th Cir. 2013).

A decision last month from the Seventh Circuit is illustrative, where a plaintiff had committed a serious infraction justifying termination under the employer's policies, and relied

primarily on records of comparative employees from the employer's written records. *See Morris v. BNSF Ry. Co.*, 2020 U.S. App. LEXIS 25387, at *7-13 (7th Cir. August 11, 2020). Although the defendant characterized the comparator evidence as "vague" and unpersuasive, that evidence, when presented to a jury (along with a suggestion of dishonesty by the defendant), was sufficient to support a seven figure judgment, including punitive damages. *Id*. at *9-18, 33-25. Likewise, in a recent Fourth Circuit case, a black plaintiff with multiple disciplinary infractions was terminated, however the Court reversed summary judgment, holding the disciplinary record of a single white comparator who was retained was sufficient to reverse the district court's grant of summary judgment. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 221-25 (4th Cir. 2019).

One factual example from this case concerns Fredy Hernandez, a co-worker of Plaintiff, and is illustrative of the importance of the destroyed records and of the nature of the prejudice imposed on Plaintiff. His circumstances are notable because Defendants now claim in their Motion for Summary Judgment that Plaintiff was fired for insubordination, *see* ECF No. 125, at 16, 22-25, even though they never made any record or informed Plaintiff that she was being terminated for that reason. Mr. Hernandez had a history of attendance problems, for which he was written up; disciplinary records that were kept in the employee's personnel file. Ex. 6, at 79:21-80:9; 82:17-83:10; 108:10-109:19. Notably, Mr. Hernandez was also found to be insubordinate, and that record of discipline was also placed in his personnel file. *Id.* 118:12-121:4. ARP claimed in interrogatory responses that Mr. Hernandez was terminated for his insubordination (it made no mention of his other disciplinary infractions), and later rehired him. *See* Ex. 10, at 3. Mr. Hernandez, however, testified that he was not fired. *See* Ex. 15, Hernandez Dep. Tr. 74:3-6. (Feb. 11, 2020). Those records were apparently destroyed with his personnel file; though responsive to discovery, they were not produced. Had they been produced, they would have reflected the nature

21

of Mr. Hernandez's infractions and the severity of his discipline, and thus could well have evidenced pretext and discrimination. ARP's destruction of evidence deprived plaintiff of that proof, as well as similar proof for other, unidentified employees.

    While Plaintiff believes her case is strong, Defendants, who at one point represented the that the personnel files were too voluminous to reasonably review, disciplined and/or terminated "numerous employees" they could not identify, presumably because they destroyed all personnel files before 2017 (or, alternatively, after plaintiff filed her lawsuit or "sometime in summer 2018" under incredible circumstances). Regardless, Defendants most certainly destroyed personnel records – including Plaintiff's[7] – while they were under a legal obligation to do so and under circumstances the reflect bad faith. That destroyed evidence, had it been maintained, could have been the difference between a strong verdict and one that less effectively captures the heart of a jury.

Defendants argue in their Motion for Summary Judgment that Plaintiff cannot prove her case on the (inaccurate) ground that Plaintiff must lose her termination claim because she **"cannot identify a single comparator"** treated worse than her. *See* Defs' MSJ at 27. Defendants effectively admit such evidence is "relevant." *Id*. Sanctions are warranted. *See Callahan v. Pac. Cycle, Inc.*, 756 F. App'x 216, 227 (4th Cir. 2018) (spoliation jury instruction); *King v. Am. Power*

---

[7]     Defendants attempted to claim that it retrieved Plaintiff's personnel file before it was destroyed, *see* Ex. 9, at 164: 6-11, however the claim is not plausible. Ms. Batten claimed the file contained constructive counseling, but "very, very little information." *Id.* at 182:9-13. Actually, only two records were in the claimed "personnel file" produced by Defendants: Ms. Membreno's termination paper and a disciplinary record given to "Jose Membreno" in 2011. *See* Ex. 16, ARP 121-124. According to the store's General Manager, before, during, and after Ms. Membreno was terminated, personnel files were kept in the same paper files in the Managers' office at the Silver Spring store, and they contained the employee's contact information, application, I-9 Form, and photocopy of their ID, along with records reflecting employee discipline. Ex. 6, at 9:18-10:6; 19:21-20:10; 29:16–30:13; 79:21-80:9; 82:17-83:10. Defendants' claim to have retained Ms. Membreno's personnel file is not worthy of belief.

*Conversion Corp.*, 181 F. App'x 373, 378 (4th Cir. 2006) (dismissal); *Vodusk v. Bayliner Marine Corp.*, 71 F.3d 148, 157 (4th Cir. 1995) (adverse inference); *LA Weight Loss*, 509 F. Supp. 2d at 541 (same).

### E. Defendants' conduct warrants sanctions pursuant to the Court's inherent authority.

Defendants' inconsistent, evasive, and misleading explanations for failing to produce disciplinary information is sanctionable under the court's inherent authority. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), the Supreme Court explained the origin and reach of the court's inherent power to impose sanctions for delaying or disrupting litigation in bad faith. The Fourth Circuit has interpreted *Chambers* as authorizing use of the inherent power to impose sanctions "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the [judicial] process." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993); *see also Victor Stanley*, 269 F.R.D. at 518 (noting the court's inherent authority to impose sanctions for bad faith conduct). The "[f]ailure to obey court orders . . . amounts to bad faith." *Paradyme Mgmt. v. Curto,* No. PWG-17-3687, 2018 U.S. Dist. LEXIS 230935, at *24 (D. Md. June 11, 2018).

As demonstrated above, Defendants' conduct amounts to bad faith. *See also Victor Stanley*, 269 F.R.D. at 530 (recognizing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 644 (S.D. Tex. 2010), as instructive of bad faith where party had notice of duty to preserve, provided inconsistent explanations for the destruction, and later found discovery contradicted the party's earlier representations). Sanctions are warranted pursuant to the Court's inherent authority. *See Paradyme Mgmt.,* 2018 U.S. Dist. LEXIS 230935, at *18 ("Pursuant to their inherent authority, courts may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct

investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions." (internal citation omitted)).

## II. ARP VIOLATED RULE 26(E) BY FAILING TO TIMELY SUPPLEMENT THEIR WRITTEN DISCOVERY RESPONSES.

In their Motion for Summary Judgment, Defendants rely upon declarations from their Director of Training Nancy Fournier and their Lead Trainer Belinda Kelly as evidence that they maintained anti-discrimination polices, that those polices were acknowledged by employees, that they provided related training and had reporting mechanisms, that Plaintiff was aware of – and failed to use – those procedures, that Ms. Membreno readily understood and spoke English, and that Ms. Membreno informed others that she was transgender.  *See* Defs MSJ, at 11 & 32; *id.* at Exs. M & N [ECF Nos. 125-13, -14].  However, ARP never identified Ms. Fournier or Ms. Kelly in response to Plaintiff's discovery requests, and never supplemented its interrogatory answers at any time thereafter to include these witnesses.  Additionally, the declarations of Ms. Kelly and Ms. Fournier were executed on March 2, 2020, and March 6, 2020, yet ARP never supplemented its responses to discovery to include the declarations, even though they were executed over two months prior to Plaintiff's 30(b)(6) deposition of Defendants taken on May 13, 2020.  ARP's failure to timely supplement its discovery responses – to (1) identify these witnesses in answers to interrogatories as persons with knowledge of the claims and defenses in the case, and (2) produce the witness declarations in response to several of Plaintiff's requests for production – violated Rule 26(e), and appropriate sanctions should be levied.

In their declarations, both Ms. Fournier and Ms. Kelly aver that they have personal knowledge regarding the claims and defenses asserted by the parties in this case, including (but not limited to) that Defendants allegedly maintained several safeguards and reporting mechanisms to prevent harassment of individuals such as Plaintiff, that Plaintiff was trained on those policies

and trained others on those policies, that Plaintiff had actual knowledge of those policies, that Defendants made allegedly diligent efforts with respect to those policies, that Ms. Membreno allegedly was proficient in the English language (presumably to be able to understand those procedures and mechanisms), but that Ms. Membreno allegedly never complained about any of the acts of harassment that she complains about in this litigation, including concerning specific managers who harassed her relentlessly.  *See* ECF Nos. 125-13 & 125-14.  As those are actually offered in Defendants' Motion for Summary Judgment in support of their claims that Plaintiff's allegations must fail as a matter law, *see* Def. Mem. at 10-11, 32-34, thus by definition they concern Plaintiff's claims and Defendants' defenses.  *See also* ARP's Answer to Plaintiff's First Amended Complaint, "Ninth Defense" at 18 (August 29, 2019) [ECF No. 45] (Plaintiff's claims must be "dismissed because at all times ARP took reasonable care to prevent and correct promptly any harassment or discrimination about which it knew or should have known and Plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities ARP provided to her or avoid harm otherwise.").

> Plaintiff's First Set of Interrogatories to Defendant ARP sought the following:
>
> INTERROGATORY NO. 1: Identify each person with knowledge of the allegations in Plaintiff's complaint, facts contrary to those allegations, Defendants' defenses, and affirmative defenses, and describe the substance of what each such person knows.

Ex. 2, at 2.  ARP responded to Interrogatory No. 1, however it did not identify Ms. Kelly or Ms. Fournier in its responses, notwithstanding these individuals' alleged personal knowledge of facts concerning Plaintiff's claims and Defendants' defenses.  *See id*.  Thereafter, ARP twice supplemented its responses, but never included Ms. Kelly or Ms. Fournier in any supplemental response.

Additionally, ARP did not supplement its Responses to Plaintiff's First Request for Production of Documents to serve Plaintiff with copies of the declarations of Ms. Kelly and Ms. Fournier; rather, Plaintiff received them for the first time attached to Defendants' Motion. Those declarations would have been responsive most obviously to Plaintiff's Request No. 1 of her First Request for Production of Documents to ARP, as well as several other requests:

> **REQUEST NO. 1:** *Documents concerning your defenses and affirmative defenses.* . . .

> **REQUEST NO. 6:** *Documents concerning Plaintiff's job performance, including any awards, praise, deficiency, perceived deficiency, or discipline. . . .*

> **REQUEST NO. 7:** *Documents concerning any complaint or concern voiced by Plaintiff related to Plaintiff's employment, sex, or gender identity. . . .*

> **REQUEST NO. 9:** *Documents reflecting communications regarding or referring to Plaintiff. . . .*

Ex. 1, at 2-5.

Although Ms. Kelly's and Ms. Fournier's declarations were executed on March 2 and March 6, 2020 respectively, ARP never supplemented its discovery responses to identify the declarations and serve them to Plaintiff. When executed, Defendants knew that Plaintiff's 30(b)(6) deposition of Defendants was pending (which took place on May 13, 2020), that averments in the declarations pertained to subjects covered in the already-served 30(b)(6) notice, and that Plaintiff could have amended her 30(b)(6) notice to ensure coverage in advance of the deposition. Instead, Defendants filed the declarations for the first time with their Motion for Summary Judgment, after they had the signed declarations in their possession for over six months.

As discussed in Section I(B), *supra*, a party's failure to timely supplement its discovery responses as required by Rule 26(e) subjects the party to the "'automatic sanction' of exclusion," including that the party be prohibited from using both the information and the witness to supply

evidence on a motion, at a hearing, or at trial.  *See Russell,* 763 F.3d at 396-97; *S. States Rack & Fixture, Inc.*, 318 F.3d at 595 & n.2 (quoting Fed. R. Civ. P. 37(c) advisory committee's note on 1993 amendments); *see also Owens v. Balt. City State's Attys. Office,* No. GLR-11-3295, 2016 U.S. Dist. LEXIS 134424, at *20-25 (D. Md. Sep. 29, 2016).  The "automatic sanction" of exclusion may only be avoided if the failure to provide responsive information is "substantially justified or harmless," guided by evaluating whether the evidence is a "surprise," the ability to cure, its disruption, its importance, and any explanation for non-disclosure.  *Russell*, 763 F.3d 385, at 397 (quoting *Southern States*, 318 F.3d at 597); see also *supra* Section I(B).

Plaintiff was not aware that Ms. Fournier or Ms. Kelly had the personal knowledge that they profess in their declarations, thus satisfying the "surprise" element.  There is no adequate opportunity to cure the surprise now – six months after the close of discovery and in opposing summary judgment – where Plaintiff's litigation strategy was forged on Defendants' responses to discovery and depositions of other witnesses, including the corporation though a subsequent 30(b)(6) deposition, that would have been altered to address the witnesses or their allegations had they been timely disclosed.  The information is apparently important because Defendants developed it outside the discovery process and are using it affirmatively to attempt to defeat Plaintiff's legal claims entirely, yet Plaintiff was not given the opportunity to potentially depose the witnesses prior to other depositions or address the subject matter and nature and biases of the witnesses in the 30(b)(6) deposition.  Plaintiff is unaware of any grounds that Defendants could offer for failing to disclose or supplement their discovery responses to include these witnesses or produce their declarations.

Upon a finding that ARP failed to timely supplement discovery, the Court is authorized to "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or

from introducing designated matters in evidence," and "strik[e] pleadings in whole or in part." Fed. R. Civ. P. 37(c)(1)(C) (incorporating sanctions listed in Rule 37(b)(2)(A)(ii) and (III)).  ARP's failure to supplement is not substantially justified or harmless, and thus the automatic sanction of exclusion is justified.

## III.    REQUESTED SANCTIONS

Plaintiff seeks the following sanctions against Defendants alone.  Plaintiff asks that the Court rule that the requested sanctions, if granted, do not prevent Plaintiff's use of evidence or argument concerning the subjects herein, whether on motion, at a hearing, or trial.  Specifically, Plaintiff requests that the Court:

(1)    Prohibit Defendants from offering argument or evidence on summary judgment, on motion, at a hearing, or at trial that Plaintiff was treated the same as or more favorably than non-transgender employees;

(2)    Prohibit Defendants from offering argument or evidence on summary judgment, on motion, at a hearing, or at trial concerning comparator evidence or evidence of other employees who were disciplined or terminated, other than the documents produced in discovery;

(3)    Prohibit Defendants from offering argument or evidence on summary judgment, on motion, at a hearing, or at trial that Plaintiff had a break in her employment at the Silver Spring store;

(4)    Give an adverse inference instruction to the jury that the documents destroyed would have been adverse to Defendants; and

(5)    Order such other sanctions as this Court deems just and proper under the circumstances.

Plaintiff requests that the court impose the following sanctions as a result of Defendants' failure to supplement discovery with the identities and declarations of Ms. Fournier and Ms. Kelly:

(1)    Prohibit Defendants from offering argument or evidence on summary judgment, on motion, at a hearing, or at trial concerning the subjects addressed by Ms. Fournier and Ms. Kelly in their declarations; and

(2)    Prohibit Defendants from calling Ms. Fournier and Ms. Kelly as a witnesses on motion, at a hearing, or at trial.

These sanctions are reasonably tailored to Defendants' conduct and allow for a just resolution of their discovery violations.

## IV.    PLAINTIFF SHOULD BE AWARDED REASONABLE ATTORNEYS' FEES AND COSTS.

Plaintiff should be awarded attorneys' fees and costs for the violations set forth in this Motion pursuant to Rule 37 of the Federal Rules of Civil Procedure, as well as other authorities. *See Victor Stanley*, 269 F.R.D. at 536. Plaintiff respectfully suggests that attorneys' fees and costs are warranted for her efforts for the following:

(1)    Preparation and argument concerning the matters set forth in this Motion;

(2)    Seeking supplementation of responses and discovery concerning discipline and terminations, including Plaintiff's efforts to obtain the discovery, resolve the parties' disputes, motions practice, and argument;

(3)    Taking depositions of witnesses concerning discipline and terminations of employees, personnel records, and recordkeeping practices; and

(4)    Researching and drafting jury instructions concerning any adverse inference to be made against Defendants; and

(5)    Such other matters as this Court deems just and proper.

## CONCLUSION

Plaintiff respectfully requests that the Court grant her motion.


Date: September 16, 2020

Respectfully submitted,

CORREIA & PUTH, PLLC

*/s/ Jonathan C. Puth*
Jonathan C. Puth (Bar No. 15131)
Lauren A. Khouri (Bar No. 19549)
1400 16th Street, NW, Suite 450
Washington, D.C. 20036
Tel: (202) 602-6500
Fax: (202) 602-6501
jputh@correiaputh.com
lkhouri@correiaputh.com

*Counsel for Plaintiff Diana Membreno*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, a true and accurate copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of the filing to all counsel of record.

*/s/ Lauren A. Khouri*
Jonathan C. Puth (Bar No. 15131)
Lauren A. Khouri (Bar No. 19549)
CORREIA & PUTH, PLLC
1400 16th Street, NW, Suite 450
Washington, D.C. 20036
Tel: (202) 602-6500
Fax: (202) 602-6501
jputh@correiaputh.com
lkhouri@correiaputh.com

*Counsel for Plaintiff Diana Membreno*

31

| Plaintiff's Motion for Sanctions – Exhibit Key | |
|---|---|
| Exhibit No. | Exhibit Description |
| 1 | Def. ARP's Responses to Plaintiff's First Requests for Production of Documents, Nov. 21, 2019 |
| 2 | Def. ARP's Responses to Plaintiff's First Set of Interrogatories, Nov. 21, 2019 |
| 3 | Signed Acknowledgement of Def. ARP's Responses to Plaintiff's First Set of Interrogatories |
| 4 | Email Correspondence Between Jonathan Puth and Sul Kim, Feb. 26, 2020 |
| 5 | Deposition Transcript Excerpts of German Ventura, Feb. 26, 2020 |
| 6 | Deposition Transcript Excerpts of Kendrick Pittman, Feb. 26, 2020 |
| 7 | Letter from Maryland Commission on Civil Rights, Apr. 26, 2017 |
| 8 | EEOC Notice to Defendants, Apr. 26, 2017 |
| 9 | Deposition Transcript Excerpts of Defendants' 30(b)(6) Corporate Designee, Charlye Batten-Miller, May 13, 2020 |
| 10 | Def. ARP's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, Feb. 28, 2020. |
| 11 | Email Correspondence Between Erica Mason, Roshni Shikari, and Jonathan Puth Regarding Def. ARP's Supplemental Reponses, Feb. 29, 2020 |
| 12 | Membreno Maryland Commission on Civil Rights Charge, Mar. 15, 2017 |
| 13 | Letter from Erica Masson to the Maryland Commission on Civil Rights Regarding Mediation, June 23, 2017 |
| 14 | Letter from Jonathan Puth to Erica Mason Regarding Representation, July 27, 2018 |
| 15 | Deposition Transcript Excerpts of Fredy Hernandez, Feb. 11, 2020 |
| 16 | Membreno's Notations of Incidents, ARP 00121-00124, Feb. 20, 2011 and Dec. 24, 2016 |