IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIANA MEMBRENO,                          *

     Plaintiff,                          *

v.                                       *          Case No. PX-19-0369

ATLANTA RESTAURANT PARTNERS,             *
LLC, *et al.,*
                                         *

     Defendants.
               *     *     *     *     *     *

**MEMORANDUM OPINION**

Pending before the Court is the Motion for Sanctions ("Motion") filed by Plaintiff Diana Membreno ("Ms. Membreno").[1] ECF No. 136. Having considered the submissions of the parties, I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted in part and denied in part.

**I.      Background**

Ms. Membreno is a transgender woman. ECF No. 37 ¶ 2. Between 2007 and 2017, Ms. Membreno was employed at the TGI Fridays restaurant located in Silver Spring, Maryland, which is owned by Defendants. *See* ECF No. 32 at 1. She brought this lawsuit to recover damages for the Defendants' alleged violations of the Montgomery County Human Rights Law and the Maryland Fair Employment Practices Act. ECF No. 37. She claims that Defendants subjected her to a hostile work environment and discriminated against her on the basis of her gender identity and her sex. *Id.* at 1.

---

[1] Judge Xinis referred this case to me for discovery and related scheduling matters. ECF No. 81.

A scheduling order was entered in August 2019. ECF No. 43. The discovery period closed on February 28, 2020, but the parties continued to conduct discovery and the Court continued to rule on discovery disputes well into the summer of 2020.[2] *See* ECF Nos. 59, 60 & 101. Discovery in this case was contentious and the Court was required to resolve approximately 10 heated disputes. These disputes arose from both sides and neither side was particularly timid about bringing discovery matters to the Court's attention.

After discovery closed, Defendants sought and obtained numerous extensions of the deadline to file their motion for summary judgment. *See* ECF Nos. 88, 89, 94, 97, 105, 106, 113, 115, 117, 118, 121, 124 & 126. Finally, on August 15, 2020, Defendants filed their motion for summary judgment. ECF No. 125. Ms. Membreno responded to the Defendants' motion for summary judgment on September 15, 2020. ECF No. 132. On the next day, Ms. Membreno filed her Motion for Sanctions. ECF No. 136. In this Motion, Ms. Membreno brought several discovery matters to the Court's attention for the first time and sought sanctions for Defendants' purported discovery failures.

## II.     Discussion

Ms. Membreno seeks sanctions against Defendants on three grounds. First, she argues that sanctions must be imposed against Defendants for their spoliation of certain personnel files. Second, she argues that Defendants should be sanctioned for violating Rule 26(g)'s certification requirement. Third, she argues that Defendants should be sanctioned for failing to timely supplement their discovery responses as required by Rule 26(e).

---

[2] After the close of discovery, discovery was reopened for a limited purpose that is not relevant to the Motion. ECF No. 101 at 1.

A.      **Spoliation**

Ms. Membreno argues that sanctions must be imposed against Defendants because they

intentionally destroyed relevant evidence after they had a duty to preserve it. ECF No. 136 at 16-

23. Spoliation is the "destruction or material alteration of evidence . . . or the failure to preserve

property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v.*

*Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal citations omitted). In order to prove

that spoliation warrants a sanction, a party must show that:

> (1) the party having control over the evidence had an obligation to preserve it when
> it was destroyed or altered; (2) the destruction or loss was accompanied by a
> culpable state of mind; and (3) the evidence that was destroyed or altered was
> relevant to the claims or defenses of the party that sought the discovery of the
> spoliated evidence, to the extent that a reasonable factfinder could conclude that the
> lost evidence would have supported the claims or defenses of the party that sought
> it.

*Charter Oak Fire Ins. Co. v. Marlow Liquors, LLC*, 908 F. Supp. 2d 673, 678 (D. Md. 2012)

(internal citations, quotation marks, and brackets omitted); *see also Sampson v. City of Cambridge,*

*Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("This standard applies when a party is seeking any form

of sanctions for spoliation, not just an adverse inference jury instruction.").

1.      **Defendants' Destruction of Personnel Files**

During discovery, Ms. Membreno sought information about disciplinary actions that

Defendants had taken against their employees at the Silver Spring TGI Fridays. ECF No. 136 at 4.

In November 2019, Defendant Atlanta Restaurant Partners, LLC ("ARP") objected to the requests,

claiming that producing the requested discovery "would require reviewing hundreds of individual

personnel files." *Id.* ARP also noted that "some or many [files] may have been purged in the normal

course of business." *Id.* at 5. Believing that ARP's objections had no merit, Ms. Membreno brought

the matter to the Court's attention in January 2020. ECF No. 66. In response to Ms. Membreno's

complaint, ARP explained that they had a "significant practical hardship" in responding to the discovery requests: "Due to the way Defendant maintains and stores data within the company, it is difficult, if not impossible, for Defendant to gather the employee list prior to 2016." ECF No. 76 at 2. Defendants also explained that due to a change in record-keeping practices, ARP did not have "any personnel files, including any disciplinary information, prior to 2017." *Id.* After hearing from the parties, the Court overruled Defendants' objections to the discovery requests and ordered ARP to produce responses to the requests. ECF No. 78. The Court also specifically ordered Defendants to supplement the responses in a timely manner if they learned that their previous responses were incomplete or incorrect. *Id.*

Throughout February 2020, Ms. Membreno diligently attempted to obtain discovery from ARP related to the personnel files. ECF Nos. 136 at 6-7; 137 at 11-15. On February 28, 2020, ARP produced supplemental responses to Ms. Membreno's interrogatories. ECF No. 136-10. In response to Ms. Membreno's Interrogatory No. 6, which sought information about employees disciplined for attendance or tardiness issues at the TGI Fridays in Silver Spring, ARP stated, in part:

> As noted previously, during the course of its inquiry, Defendant ARP learned that many employee personnel files were destroyed in error during a store audit sometime in the summer of 2018, which would have included all prior personnel files and the disciplinary actions contained therein.

ECF No. 136-10 at 4.

On May 13, 2020, Ms. Membreno deposed Defendants' corporate designee, Charlye Batten-Miller ("Ms. Batten"). ECF No. 136-9. During the deposition, Ms. Batten testified that the Silver Spring TGI Fridays maintained personnel files for its employees during the times relevant to this lawsuit. *Id.* at 5-6. Ms. Batten explained that these personnel files had been destroyed, either due to a "huge misunderstanding" or because the Defendants' "director of training" instructed the

restaurant managers to destroy the personnel files. *Id.* at 6-7. Apparently, during the director of training's visit to the Silver Spring TGI Fridays on an unspecified date (sometime during the summer of 2018, *see id.* at 8-9), the director of training "made a statement about cleaning up and getting rid of some . . . stuff." *Id.* at 6. The restaurant managers interpreted this to mean that they should destroy the personnel files that were maintained for the Silver Spring TGI Fridays' employees. *Id.* The managers destroyed the files consistent with their understanding of the instructions they had been given.[3] *Id.*

### 2.    Defendants Had a Duty to Preserve the Personnel Files

The Court must first determine when Defendants' duty to preserve the potentially spoliated evidence arose. Once a party reasonably anticipates litigation, it is obligated to implement a "litigation hold" to ensure that potentially relevant evidence under its control is identified, located, and preserved for use in the anticipated litigation. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009); *see also Silvestri*, 271 F.3d at 591 ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.") The duty of preservation applies to

> any documents or tangible things . . . made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." The duty also includes documents prepared *for* those individuals, to the extent those documents can be readily identified (*e.g.,* from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of *any* party, or which is "relevant to the subject matter involved in the action." Thus, the duty to preserve extends to those employees likely to have relevant information—the "key players" in the case.

*Goodman*, 632 F. Supp. 2d at 511-12.

---

[3] The restaurant's managers apparently dispute that they destroyed the files because of a misunderstanding. *See id.* at 6-7. They told Ms. Batten that they were specifically instructed to destroy the personnel files. *Id.*

Defendants acknowledge that "[o]n March 15, 2017, Plaintiff filed a Charge with the Maryland Commission on Civil Rights . . ., which was cross-filed with the U.S. Equal Employment Opportunity Commission." ECF No. 125 at 18. Defendants were informed of Ms. Membreno's Charge by the Maryland Commission on Civil Rights by a letter dated April 26, 2017. ECF No. 138-1 at 7-10. The Court finds that Defendants should have reasonably anticipated litigation beginning on or about April 26, 2017, when they received notice of Ms. Membreno's Charge, and that they had a duty to preserve potentially relevant evidence beginning on that date.[4]

### 3.     Defendants Acted Willfully

The Court now considers the degree of Defendants' culpability for the destruction of the personnel files. "In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010) (*citing Goodman*, 632 F. Supp. 2d at 518, 520). In the context of spoliation, ordinary negligence is the failure to identify, locate, and preserve evidence, where a reasonably prudent person acting under like circumstances would have done so. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 519 (S.D.W. Va. 2014). A finding of gross negligence requires a similar showing as ordinary negligence, but to a greater degree. *Id.* Willfulness and bad faith will only be found where a party has engaged in "intentional, purposeful, or deliberate conduct." *Id.* (quoting *Victor Stanley*, 269 F.R.D. at 529). While bad faith requires the destruction of evidence "for the purpose of depriving the adversary of the evidence," *Goodman*, 632 F. Supp. 2d at 520,

---

[4] Ms. Membreno notes that Defendants also had statutory duties to preserve potentially relevant evidence. ECF No. 136 at 7.

willfulness only requires a demonstration of intentional or deliberate conduct resulting in spoliation. *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008).

The Court finds by clear and convincing evidence that Defendants' destruction of the personnel files was willful.[5] The personnel files were intentionally destroyed by the restaurant managers at the Silver Spring TGI Fridays. Depending on whose version of events is credited, the managers either destroyed the files because had been instructed to do so, or because they misunderstood which items they were instructed to destroy. For the sake of this Motion, the Court will view the disputed evidence in the light most favorable to Defendants, and assume that the managers simply misunderstood which files they were supposed to be destroy.

Even assuming there was a "huge misunderstanding" that led to the destruction of the personnel files, Defendants' conduct still amounts to more than gross negligence. First, by virtue of their job duties, the managers were in a position to know the contents of the files they destroyed. This is not a case of a low-level employee negligently destroying important documents, *see Eller v. Prince George's Cty. Pub. Sch.*, No. TDC-18-3649, 2020 WL 7336730, at *8 (D. Md. Dec. 14, 2020) (finding that a defendant's loss of evidence was grossly negligent where a low-level employee lost or destroyed the evidence in contravention of an official policy that such documents be maintained), or of an organization failing to institute a proper litigation hold, *see Equal Employment Opportunity Comm'n v. Performance Food Grp., Inc.,* No. CCB-13-1712, 2019 WL 1057385, at *6 (D. Md. Mar. 6, 2019) (finding that a "defendant's failure to implement any measures to ensure that potentially relevant evidence would be preserved constituted at least

---

[5] Because "the precise burden of proof in a motion for sanctions is unclear in the Fourth Circuit," *see Glynn v. EDO Corp.*, No. JFM-07-1660, 2010 WL 3294347, at *2 (D. Md. Aug 20, 2010), "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a harsh sanction like an adverse inference is sought." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

ordinary negligence"). The managers knew the documents were personnel files and destroyed them anyway. *See Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 821 (E.D.N.C. 2008), *objections overruled,* No. 4:06-CV-117-F(2), 2009 WL 863348 (E.D.N.C. Mar. 27, 2009) (finding a defendant's destruction of evidence was willful where documents were "deliberately destroyed" and explaining that there was "no evidence suggesting that defendant's destruction of the work orders was negligent, such as the result of failure by an employee to follow instructions not to destroy them") (citing *Buckley*, 538 F.3d at 323).

Second, to the extent that there was a "huge misunderstanding" between the managers and the director of training, the fault still lies with Defendants. Because Defendants should have reasonably anticipated litigation on or about April 26, 2017, they should have taken steps to ensure that all potentially relevant evidence was "identified, located, and preserved" by the time of the director of training's visit in the summer of 2018. *See Goodman*, 632 F. Supp. 2d at 511. This obligation was clearly not impressed upon the managers or the director of training. When the director of training instructed the managers to "clean up" and "get rid of some . . . stuff," ECF No. 136-9 at 6, there is no evidence that she also cautioned them that documents that might potentially be relevant to Ms. Membreno's litigation must be preserved. To the extent that the managers knew of their duty to preserve the personnel files and destroyed them anyway, their conduct was willful. And to the extent that the managers were unaware of their duty to preserve potentially relevant evidence, the fault is attributable to Defendants' failure to take reasonable steps to comply with their duty to preserve potentially relevant evidence.

The Court does not find that Defendants' destruction of the personnel files was done in bad faith or to gain a tactical advantage in anticipated litigation. Ms. Membreno's main argument on this point is that Defendants' explanations for the missing personnel files have changed over time.

The Court shares Ms. Membreno's frustrations with the Defendants' conduct in connection with the missing personnel files. But the Court cannot find that the files were destroyed for the purpose of depriving Ms. Membreno of relevant evidence. In the Court's view, it is more likely that Defendants' explanations have shifted over time because no one wanted to take responsibility for such an egregious mistake and because Defendants' lawyers were not diligent in getting to the bottom of what happened to the missing files. Without evidence that the files were destroyed so that Defendants might gain an advantage in litigation, the Court cannot find that the destruction was done in bad faith.

### 4.    The Destroyed Personnel Files are Relevant

Finally, the Court considers whether the missing personnel files are "relevant" to Ms. Membreno's claims. "The test for relevance for purposes of establishing the third element is somewhat more stringent than merely meeting the standard provided in Federal Rule of Evidence 401." *Sampson*, 251 F.R.D. at 179. In the context of spoliation, lost or destroyed evidence is relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Victor Stanley*, 269 F.R.D. at 531 (internal citations omitted). In addition, in order for a court to impose sanctions, "the absence of the evidence must be prejudicial to the party alleging spoliation." *Id.* ("Put another way, a finding of 'relevance' for purposes of spoliation sanctions is a two-pronged finding of relevance and prejudice."); *Sampson*, 251 F.R.D. at 179 ("The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause.") (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D. Colo. 1996)).

When a party alleging spoliation shows that the alleged spoliator acted willfully or in bad faith in failing to preserve the evidence, "the relevance of that evidence is presumed in the Fourth Circuit." *Victor Stanley*, 269 F.R.D. at 532. Even where the relevance of spoliated evidence is presumed, however, "the spoliating party may rebut this presumption by showing that the innocent party has not been prejudiced." *Id.* (internal quotation omitted).

### a.    General Relevance

There can be no question that the missing personnel files are relevant to Ms. Membreno's claims. If, as Ms. Membreno alleges, Defendants treated her differently than similarly situated employees, proof of this might have been found in the personnel files of the comparators. This evidence would have helped Ms. Membreno to establish that she was discriminated against and that the discrimination was because of her transgender status and her sex. Alternatively, because Defendants willfully destroyed the files, the Court is permitted to presume that the files are relevant. *See id.*

### b.    Prejudice

In order for a Court to impose sanctions upon a spoliator, the misconduct must have caused prejudice to the opposing party. *Victor Stanley*, 269 F.R.D. at 532. A party is prejudiced by the spoliation of evidence where the party's ability to present its case is compromised as a result of the missing evidence. *Id.* (noting that "[p]rejudice can range along a continuum from an inability to prove claims to little or no impact on the presentation of proof") (internal quotation marks omitted). The Court finds that Ms. Membreno has been prejudiced by Defendants' destruction of the personnel files. "Ever since the Supreme Court's watershed decision in *McDonnell Douglas*, courts have considered comparator evidence to be a particularly probative means for discerning whether a given adverse action was the product of a discriminatory motive." *Laing v. Fed. Exp.*

*Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). Because of Defendants' destruction of the personnel files, Ms. Membreno has been deprived of an important source of comparator evidence.[6]

### 5. Timeliness

Defendants object to Ms. Membreno's Motion on the grounds that it is untimely. ECF No. 137 at 19. Although Rule 37 "does not contain a statute of limitations" for filing spoliation motions, courts nonetheless consider a number of factors in assessing the timeliness of such motions:

> (1) how long after the close of discovery the relevant spoliation motion has been made; (2) the temporal proximity between a spoliation motion and motions for summary judgment; (3) whether the spoliation motion was made on the eve of trial; and (4) the explanation of the moving party as to why the motion was not filed earlier should be considered.

*Al-Sabah v. Agbodjogbe*, No. ELH-17-730, 2019 WL 4447235, at *4 (D. Md. Sept. 17, 2019) (internal citations and quotation marks omitted); *see also Goodman*, 632 F. Supp. 2d at 508 (noting that "there is a particular need for [spoliation] motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion").

The Court agrees that Plaintiff improperly delayed in filing her Motion. Ms. Membreno filed the Motion nearly seven months after the close of discovery. She knew by the end of February 2020 that Defendants had destroyed the personnel files at a time when they had a duty to preserve them. She should have filed her Motion promptly upon becoming aware of Defendants' spoliation.

---

[6] As Ms. Membreno notes in her Motion, this is not some abstract form of prejudice. ECF No. 136 at 23-24. She provides one example of how the spoliation has resulted in actual prejudice. According to Ms. Membreno, a former co-worker named Fredy Hernandez had "a history of attendance problems" and insubordination, but Defendants treated him more favorably than Ms. Membreno. *Id.* The evidence about how Defendants treated Mr. Hernandez is conflicting. Some evidence indicates that Mr. Hernandez was fired for insubordination and later rehired. Other evidence indicates that Mr. Hernandez was not fired at all. Ms. Membreno persuasively argues that if the personnel files had not been destroyed, Mr. Hernandez's personnel file "could well have evidenced pretext and discrimination." *Id.* at 24. Because Defendants destroyed this evidence, Ms. Membreno is prejudiced.

Even after Ms. Batten's May 2020 deposition, when Ms. Membreno obtained additional evidence about Defendants' culpability, she continued to delay. Although she was in possession of all of the information she needed to seek sanctions against Defendants, she waited four more months to file her Motion.

Ms. Membreno's explanation for her delay is inadequate. She argues that she was unable to file a motion for sanctions before Ms. Batten's May 2020 deposition, which is when she first obtained the necessary evidence about Defendants' culpability. ECF No. 138 at 10. She also argues that her counsel faced several obstacles to filing the motion during the spring of 2020. *Id.* at 10 n. 7. None of this explains why she waited until September 2020 to file her Motion. The Court rejects as incredible Ms. Membreno's argument that only after Defendants filed their motion for summary judgment did she realize the true import of the destroyed evidence. *See id.* at 11. Her diligence in pursuing evidence related to similarly-situated employees demonstrates that she saw the potential importance of the evidence well before Defendants filed their motion for summary judgment. Ms. Membreno is represented by experienced counsel. Her counsel must have foreseen the possibility that Defendants would raise the purported lack of comparator evidence as a defense. *See* ECF No. 136 at 16, 22-23 (explaining why comparator evidence can be critical to a plaintiff's claims in an employment discrimination case).

Although Ms. Membreno delayed filing her Motion without justification, the Court also considers the effect that the late filing has on the remaining proceedings in this case. First, Ms. Membreno does not seek to take additional discovery so the Motion will not cause any delay in terms of reopening discovery. Second, although Ms. Membreno filed her Motion in the middle of summary judgment briefing, the presiding judge has not yet ruled on Defendants' motion for summary judgment. And because Ms. Membreno filed her Motion at the same time as her response

to Defendants' motion for summary judgment, Defendants have had an opportunity to address the issue of spoliation sanctions in their reply brief. *See* ECF No. 141 at 18-19. Third, the ongoing COVID-19 pandemic has disrupted the Court's trial calendar. The parties are unlikely to get a trial date in the near future. This would be the case even if Plaintiff had filed her Motion in a timely manner.

The Court will not deny Ms. Membreno's Motion as untimely.[7] Although Ms. Membreno has not provided a good reason for her delay, Defendants' misconduct is serious and Defendants are not significantly prejudiced because of the delayed filing.

### 6.    Sanctions

The Court must now determine what sanctions are appropriate for Defendants' spoliation. Courts have "broad discretion" to choose a spoliation sanction, but the "applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Courts may impose a number of types of sanctions for spoliation: "assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default." *Victor Stanley*, 269 F.R.D. at 533 (citing *Goodman*, 632 F. Supp. 2d at 506). "When assessing what sanction to impose, courts consider the degree of culpability and the extent of the prejudice, if any." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, Inc., 803 F. Supp. 2d 469, 499-500 (E.D.

---

[7] The Court declines Defendants' invitation to deny Ms. Membreno's Motion because it does not comply with the Court's rules and orders regarding the procedure for resolving discovery disputes. ECF No. 137 at 17. Defendants' spoliation is not a trivial matter. It has deprived Ms. Membreno of important evidence that is relevant to her claims. It has required the Court to spend substantial time reviewing nearly 400 pages of briefing and exhibits. This is not a matter that could have been resolved through the Court's truncated procedure for resolving discovery disputes.

Va. 2011). A court must "impose the least harsh sanction that can provide an adequate remedy." *Id.* at 534 (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010)).

In the Fourth Circuit, an adverse inference is available as a sanction for spoliation if the spoliator's loss or destruction of the evidence was done willfully. *See Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *Digital Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*, No. 2:09CV555, 2013 WL 5533233, at *5 (E.D. Va. Oct. 3, 2013) ("The sanctions available differ with the level of fault; for instance, the imposition of an adverse inference requires a finding of willfulness or bad faith."); *Sampson, Md.*, 251 F.R.D. at 181 ("In order for the court to give an adverse inference instruction, plaintiff must establish that defendant acted either willfully or in bad faith in failing to preserve relevant evidence, while, if the court finds that the defendant's conduct was merely negligent, an adverse inference instruction is not an appropriate sanction.").

The Court finds that a jury instruction that permits the jury to draw an adverse inference is an appropriate sanction for Defendants' spoliation. In imposing this sanction, it is the Court's intention to cure the prejudice that Ms. Membreno would otherwise suffer because of Defendants' spoliation and to deter Defendants from committing spoliation in the future. As other courts have done, I leave it to the presiding judge's ultimate determination as to whether such an instruction is appropriate at the time of trial. *See Reed v. Honeywell Int'l, Inc.*, No. CV07-0396-PHX-MHM, 2009 WL 886844, at *11 (D. Ariz. Mar. 31, 2009), *as amended* (Apr. 27, 2009); *Goodman*, 632 F. Supp. 2d at 525 (D. Md. 2009) (internal quotation marks omitted) ("The precise contours of the . . . jury instruction are best reserved for determination by [the presiding district judge] in making the jury charge for trial.").

I recommend that the presiding judge instruct the jury as follows (provided the instruction is appropriate in light of the evidence presented and issues in dispute at trial):

> You have heard evidence that Defendants discriminated against Ms. Membreno on the basis of her gender identity and her sex. You have also heard evidence that Defendants treated other employees more favorably than Ms. Membreno, even though they were in a similar position to her. Some evidence about the treatment of Ms. Membreno and her coworkers has not been presented to you because it was destroyed by Defendants. Specifically, in 2018, Defendants destroyed the personnel files for the employees at the Silver Spring TGI Fridays. Because Defendants destroyed these files, relevant evidence has been lost. Defendants should not have destroyed these files and they bear the sole responsibility for the loss of this evidence. You may infer that if Defendants had not destroyed the personnel files, they would have contained evidence that Defendants discriminated against Ms. Membreno on the basis of her gender identity and her sex.

I further recommend that the presiding judge preclude Defendants from (1) arguing that the destroyed personnel files corroborated Defendants' version of events regarding the treatment of Ms. Membreno and similarly situated employees, or (2) offering any evidence about the contents of the personnel files that has not already been produced in discovery.[8]

If this case proceeds to trial, this sanction will allow (but not require) the jury to find that Defendants treated similarly situated male and non-transgender employees more favorably than Ms. Membreno, and that the reason for this disparity in treatment was Ms. Membreno's sex and gender identity. I recommend that the presiding judge consider this sanction when it comes time to rule on Defendants' motion for summary judgment. Throughout Defendants' motion for summary judgment, they argue that Ms. Membreno's failure to identify similarly situated comparators treated more favorably than her means that summary judgment should be entered in

---

[8] The sanctions set forth in this decision are not exhaustive. At the time of trial, the presiding judge may find that additional jury instructions or evidentiary rulings are appropriate to remedy the prejudice caused by Defendants' spoliation. And if Ms. Membreno prevails in this case, the presiding judge may consider whether Ms. Membreno should be awarded attorney's fees related to work performed as a result of Defendants' spoliation.

Defendants' favor. *See* ECF No. 125 at 4, 18, 29. Because a jury will ultimately be permitted to infer the existence of comparator evidence that is favorable to Ms. Membreno, the presiding judge should find that there is a genuine dispute of material fact as to whether Ms. Membreno was treated less favorably than her comparators. This is necessary to ensure that Defendants do not obtain summary judgment as a benefit of having destroyed evidence relevant to Ms. Membreno's claims.

Ms. Membreno also requests an award of reasonable attorney's fees and costs. That request is denied because of Ms. Membreno's substantial delay in filing her Motion. A party that has been prejudiced by spoliation must not sit on their hands. Spoliation motions are fact-intensive and take significant time for the Court to resolve. In some cases, spoliation sanctions may "end the litigation or severely alter its course." *Goodman*, 632 F. Supp. 2d at 508. Courts have repeatedly insisted that parties file spoliation motions "as soon as reasonably possible after discovery of the facts that underlie the motion." *Id.* Ms. Membreno failed to do so in this case. Considering the broad discretion that courts have in fashioning sanctions for spoliation, the Court finds that denying Ms. Membreno's request for attorney's fees and costs is appropriate given her delay in filing the Motion. Under the circumstances of this case, awarding attorney's fees and costs to Ms. Membreno for Defendants' spoliation would not be in the interests of justice.

## B.    Certification Under Rule 26(g)

Ms. Membreno seeks sanctions against ARP for its violation of Rule 26(g). This rule provides, in pertinent part, that every discovery response or objection must be signed by an attorney of record, and that the attorney's signature constitutes a certification "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the disclosure is complete and correct. Fed. R. Civ. P. 26(g)(1). "If a certification violates this rule without

substantial justification, the court, on motion or on its own, must impose an appropriate sanction

on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

Ms. Membreno argues that ARP's November 2019 responses to her document production

requests violated Rule 26(g). ECF No. 136 at 10-13. In its objections to Ms. Membreno's discovery

requests, ARP stated that producing the requested discipline and termination records was unduly

burdensome in that it "would require reviewing hundreds of individual personnel files." ECF No.

136 at 10. At the time that ARP raised this objection, however, there were not "hundreds of

individual personnel files" to review. The personnel files had already been destroyed.

If ARP had made a reasonable inquiry into the number of personnel files in existence and

the general nature of the files (that is, whether each file was so voluminous that review would be

burdensome), it would have discovered that there was no burden in reviewing the personnel files.

There were essentially no files to review. Instead of making this reasonable inquiry, ARP

responded with a knee-jerk, boilerplate objection about undue burden. Defendants candidly admit

that ARP's response was not based on an actual inquiry into the nature of the production that would

be required to respond to Ms. Membreno's requests. ECF No. 137 at 30-31 (explaining that ARP

responded based on the number of employees at issue in the requests, the number of store locations,

and ARP's standard document retention practices).

ARP argues that its discovery responses "are not standard boilerplate objections with little

to no responsive information—nor do they misrepresent facts known at the time." ECF No. 137 at

31. ARP misses the point. Had ARP made a reasonable inquiry into the nature of the personnel

files in its possession that were responsive to Ms. Membreno's discovery requests, it would have

discovered that there were few, if any, files that could be produced. ARP may be correct that Rule

26(g) does not require parties to perform an "exhaustive investigation" before producing discovery

responses, but the plain text of the rule requires a more extensive inquiry than what ARP undertook here. Accordingly, the Court finds that ARP violated Rule 26(g)'s certification requirement and that its failure is not substantially justified.

Rule 26(g)(3) requires courts to impose appropriate sanctions against parties that violate the rule's certification requirement. In this case, the Court finds that an appropriate sanction is for ARP to pay a portion of the expenses that Ms. Membreno incurred as a result of ARP's violation. The Court finds that requiring ARP to reimburse Ms. Membreno in the amount of $1,000 is appropriate. In other circumstances, the Court would allow Ms. Membreno the opportunity to file a separate claim for attorney's fees and costs with evidence to support the claim. The Court has no doubt that Ms. Membreno incurred expenses far in excess of $1,000 as a result of ARP's violation of Rule 26(g)'s certification requirement.[9] Ms. Membreno's lead counsel, Jonathan Puth, has been a member of the bar for over 25 years. Even under the relatively conservative hourly rates set forth in Appendix B to the Court's Local Rules, an hourly rate of $300-475 is presumptively reasonable for Mr. Puth's time. Ms. Membreno would have incurred more than $1,000 in attorney's fees for Mr. Puth's time after just three or four hours of work. The Court is confident that Mr. Puth spent more than three or four hours working on Ms. Membreno's case as a result of ARP's certification violation.

At the same time, the Court cannot overlook Ms. Membreno's delay in filing her Motion. The Court expects parties to bring discovery disputes to its attention promptly. "A failure to do so

---

[9] The amount of this sanction is also in line with what other courts have imposed for violations of Rule 26(g). *See Olivarez v. GEO Grp., Inc.*, No. EP-14-CV-00436-FM, 2016 WL 8679093, at *11 (W.D. Tex. Jan. 27, 2016); *Baez-Eliza v. Instituto Psicoterapeutico de Puerto Rico*, 275 F.R.D. 65 (D.P.R. 2011); *High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2011 WL 4008009, at *4 (D. Kan. Sept. 9, 2011); *Deese v. Springfield Thoracic & Cardiovascular Surgeons, S.C.*, 183 F.R.D. 534, 536 (C.D. Ill. 1998).

may result in a determination by the Court that the dispute must be rejected as untimely." Loc. R., App. A, Guideline 1(f). The Court views ARP's violation of Rule 26(g) as a serious discovery failure. This issue should have been brought to the Court's attention more promptly. Ms. Membreno was aware of the relevant facts by May 2020 at the latest. She waited until September 2020 to bring the matter to the Court's attention. Because of Ms. Membreno's delay in bringing this matter to the Court's attention, the Court exercises its discretion to limit the award to which she is entitled for ARP's Rule 26(g) violation.[10]

### C.     Supplementation Under Rule 26(e)

Ms. Membreno argues that she is entitled to sanctions under Rule 37(c) for Defendants' failure to supplement their discovery responses under Rule 26(e). Rule 26(e) provides:

> (1) A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing

Fed. R. Civ. P. 26(e).

If a party fails to disclose or supplement the information required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts have "broad discretion to determine whether a nondisclosure of evidence is substantially

---

[10] If Ms. Membreno prevails in this case, this award of $1,000 should not be interpreted as otherwise limiting her entitlement to reimbursement for reasonable expenses incurred in connection with this litigation, including for attorney's fees that were incurred in connection with ARP's Rule 26(g) violation. Nonetheless, the presiding judge should exercise her discretion in setting any appropriate fee award so that it is not duplicative of the $1,000 sanction imposed by the undersigned.

justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis." *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003); *see also Fazzie v. Steinberg*, No. JKB-15-1730, 2018 WL 4335514, at *4 (D. Md. Sept. 11, 2018); *accord* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2050 (3d ed. 2010) (noting courts' "wide discretion"). In a 37(c)(1) analysis, courts consider five factors in deciding whether to exclude evidence: "(1) surprise to the party against whom the evidence would be offered; (2) the ability . . . to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose." *Worldwide Network Servs., LLC v. Dyncorp Int'l, LLC*, 365 F. App'x 432, 444-45 (4th Cir. 2010) (citing *S. States Rack & Fixture*, 318 F.3d at 597). In addition to evidentiary exclusion, Rule 37(c) also permits courts the discretion to impose any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi) and impose attorney's fees and costs on the sanctioned party.

Ms. Membreno argues that Defendants violated Rule 26(e)'s supplementation requirement by failing to timely correct their disclosures regarding the missing personnel files. ECF No. 136 at 13-16. Defendants could have supplemented their discovery responses more promptly but they ultimately did provide the required supplement.[11] Even assuming that Defendants violated Rule 26(e) by failing to provide a *timely* supplement, the violation is not sufficiently serious to warrant sanctions under Rule 37, particularly given Ms. Membreno's delay in bringing the matter to the

---

[11] Ms. Membreno also seeks sanctions based on Defendants' purported violation of the Court's order of February 12, 2020 (ECF No. 78), requiring Defendants to timely produce discovery. ECF No. 136 at 16-17. The Court declines to award sanctions on this basis because Defendants ultimately produced the discovery at issue and because Ms. Membreno waited too long to bring this dispute to the Court's attention.

Court's attention and the fact that Defendants will already be sanctioned for their spoliation of the personnel files. No further sanctions regarding the personnel files are necessary.

Ms. Membreno also argues that Defendants violated Rule 26(e)'s supplementation requirement by failing to identify Nancy Fournier and Belinda Kelly as witnesses with relevant knowledge and by failing to timely produce the declarations signed by these witnesses. ECF No. 136 at 26-30. Defendants argue that these witnesses were disclosed to Ms. Membreno during discovery (their names were mentioned during a deposition) and that the witnesses' declarations were produced to Ms. Membreno on March 30, 2020, well before Defendants filed their motion for summary judgment. ECF No. 137 at 7-8. The Court concludes that Defendants did not violate Rule 26(e)'s supplementation requirement. The disclosure of the identities of the witnesses during discovery was sufficient to alert Ms. Membreno that they were persons with knowledge of the claims and defenses in this case. And although the disclosure of the witnesses' declarations was made after the close of discovery, the disclosure still preceded the deposition of Defendants' corporate designee. The Court also notes that Ms. Membreno did not move to reopen discovery or to take the depositions of the witnesses after discovery had formally closed (as was done with other witnesses). In the alternative, the Court finds that if Defendants violated Rule 26(e), the violation was harmless because it did not prejudice Ms. Membreno.

### D.      Defendants' Request for Attorney's Fees and Costs

Defendants' request an award of attorney's fees and costs that were incurred in connection with their opposition of Ms. Membreno's Motion. There is no basis to award this relief to Defendants. All of the arguments contained in Ms. Membreno's Motion are nonfrivolous and substantially justified. There is no indication that she filed her Motion in bad faith. Defendants' request for an award of attorney's fees and costs is denied.

## III.     Conclusion

For the reasons set forth in this Memorandum Opinion, Ms. Membreno's Motion for Sanctions is granted in part and denied in part. The Court finds that Defendants committed spoliation and that the sanctions set forth above are warranted. The Court also finds that ARP violated Rule 26(g)'s certification requirement and that Ms. Membreno should be awarded $1,000 as partial reimbursement for the expenses she has incurred in connection with this violation. In all other respects, the Motion is denied. An Order implementing this decision will be docketed separately.

February 2, 2021
Date

                                          /s/
                                Timothy J. Sullivan
                                United States Magistrate Judge